**MINNESOTA MINING AND MANUFACTURING CO.,**
**Plaintiff–Appellant,**

v.

**NORTON COMPANY,**
**Defendant–Appellee.**

No. 90–1291.

United States Court of Appeals,
Federal Circuit.

March 27, 1991.

Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

This case, on appeal from the United States District Court for the District of Minnesota, raises the question whether an accused patent infringer's suit for a declaration of non-infringement should be dismissed because the patent involved is part of an interference proceeding in the United States Patent and Trademark Office (PTO). The district court dismissed the suit. *Minnesota Mining & Mfg. Co. v. Norton Co.*, Civil No. 4–89–676 (D.Minn. February 28, 1990). We reverse and remand.

## BACKGROUND

Appellant Minnesota Mining and Manufacturing Company (3M) and appellee Norton Company (Norton) manufacture and sell abrasive products or "grains" used in sandpaper and grinding wheels. These grains are made by a seeded gel process, in which tiny particles or seeds are introduced into a gel; the gel is then dried and fired to form a ceramic grain around the seed. The resulting grain has a finer crystal structure than grain manufactured from non-seeded processes.

Norton filed a patent application covering the seeded gel process for making abrasive grain using aluminum-based seeds.[1] Fifteen months after Norton's filing, 3M filed a patent application which claimed both the seeded gel process using aluminum-based seeds and the process using iron-based seeds. U.S. Patent 4,623,364 ('364 patent) issued to Norton in late 1986, covering the aluminum-based process, while 3M's application remained pending. 3M then initiated an interference with respect to the aluminum-based process, which is now in progress at the PTO.[2]

Before Norton's '364 patent issued, 3M had been using the aluminum-based process to produce abrasive grain. To avoid

Douglas A. Strawbridge, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minn., argued for plaintiff-appellant. With him on the brief were John D. Gould and R. Carl Moy. Also on the brief were Richard Francis and Gary L. Griswold, 3M Office of Patent Counsel, St. Paul, Minn. and Charles L. Gholz, Oblon, Spivak, McClelland, Maier & Newstadt, P.C., of Arlington, Va., of counsel.

Ronald J. Brown, Dorsey & Whitney, of Minneapolis, Minn., argued for defendant-appellee. With him on the brief were Craig D. Diviney and David R. Abrams. Also on the brief was Steven Borst, The Norton Co., Worcester, Mass., of counsel.

1. Norton also filed a series of continuing applications, still pending before the PTO, in which it claims products produced by any seeded gel process.

2. As the district court noted, 3M's claims to the iron-based process have now been granted as U.S. Patent 4,744,802.

accruing infringement damages, 3M changed to the iron-based process after the '364 patent issued. Norton and 3M then began to discuss their respective rights to the seeded gel processes. During the negotiations, Norton informed 3M that its '364 patent could be interpreted under the doctrine of equivalents to cover not only the aluminum-based process, but also 3M's iron-based process. Norton later sent letters to 3M's customers asserting that they were infringing the '364 patent. The letters demanded that the customers "cease immediately all infringing sale or use of such bonded abrasives and account to Norton for all such sale or use;" several of the letters stated that "Norton intends to vigorously enforce its patent rights against any such infringement."

On April 27, 1989, 3M filed suit for a declaration that its iron-based seeded gel process does not infringe the '364 patent and that Norton's '364 patent is limited to the process of seeding with aluminum-based particles. Norton moved to dismiss the action, arguing that the results of the pending interference proceedings might moot any declaratory judgment issued by the court.[3] The district court granted Norton's motion and dismissed 3M's complaint, basing its ruling solely on discretionary grounds.

## DISCUSSION

We note first that this is not the type of issue about which we defer to the rule of the circuit in which the district court resides. The decision to assume declaratory judgment jurisdiction here involves the interrelationship between an ongoing interference, in which priority of invention of the aluminum-based seeded gel process will be decided, and a lawsuit, in which infringement of Norton's '364 patent will be decided. Thus, it is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court. *See Goodyear Tire & Rubber Co. v.*

*Releasomers Inc.*, 824 F.2d 953, 954, n. 3, 3 USPQ2d 1310, 1311, n. 3 (Fed.Cir.1987). We therefore are not bound by decisions rendered by other circuit or district courts.

Norton claims that our review of the district court's action is limited to determining whether the district court abused its discretion. It relies on the district court's ruling that "[t]he permissive language of the [Declaratory Judgment] Act has been construed to make a declaratory judgment discretionary rather than a matter of right." Slip op. at 11. (citing *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952)).

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

(Emphasis added). Thus, the very terms of the Act and its subsequent interpretation by the courts have made the exercise of declaratory judgment jurisdiction discretionary. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126, 88 S.Ct. 733, 746–47, 19 L.Ed.2d 936 (1968); *Public Service Comm'n*, 344 U.S. at 241, 73 S.Ct. at 239; *Intermedics Infusaid, Inc. v. Regents of the University of Minnesota*, 804 F.2d 129, 134–35, 231 USPQ 653, 657–58 (Fed.Cir.1986) (holding that "the district court did not abuse its discretion" in its ruling whether to proceed with a declaratory judgment action). The reason for giving this discretion to the district court is to enable the court to make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute. Situations justifying exercise of the court's discretion to issue a declaratory judgment include "(1) when the judgment will serve a useful pur-

---

**3.** Norton also moved to dismiss 3M's action on the grounds that the district court lacked personal jurisdiction over Norton and that there was no justiciable controversy. These issues are not before us on appeal.

pose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." E. Borchard, *Declaratory Judgments*, 299 (2d ed. 1941).

■ However, the statement that a decision lies within the discretion of the trial court does not rigidly fix the decision's reviewability. Indeed, we have held that an abuse of discretion may be found when (1) the court's decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision. *Western Elec. Co. v. Piezo Technology Inc.*, 860 F.2d 428, 430–31, 8 USPQ2d 1853, 1855 (Fed.Cir.1988); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986). Here, we must determine whether the district court properly balanced the needs of 3M and the consequences of exercising declaratory jurisdiction in light of the pending interference. Our determination does not depend on particular observations of witnesses by the district court; thus, the trial court's decision is not accorded the narrow review reserved for such discretionary decisions. *Cf. Modine Mfg. Co. v. Allen Group Inc.*, 917 F.2d 538, 16 USPQ2d 1622 (Fed.Cir.1990) (great deference given to discretionary determination of inequitable conduct by district court where jury had first hand observation of those accused).

This case involves the competing policy considerations of, on the one hand, conserving limited judicial resources by declining jurisdiction and, on the other hand, utilizing the services of a court by permitting a party threatened with legal action to obtain an early adjudication of its rights and liabilities. Norton argues that "the Interfer-

ence made it at best speculative and hypothetical that a resolution of the issue presented in this litigation would have any utility at all in clarifying the legal relationship between Norton and 3M." On the other hand, 3M argues that the harm that is threatened to its business entitles it to the benefits of the Declaratory Judgment Act, which was enacted precisely for circumstances such as these. 3M argues that the district court erred in giving too little consideration to the harm which a delay in deciding the case will inflict on it. We agree with 3M. In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication. *See* E. Borchard, *Declaratory Judgments* 803–04 (2d ed. 1941); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1238 (1990); *see also Muskegon Piston Ring Co. v. Olsen*, 307 F.2d 85, 89 (6th Cir.1962), *cert. denied*, 371 U.S. 952, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963).

Norton has threatened 3M and its customers with the prospect of infringement liability.[4] As 3M continues to sell products it believes do not infringe, its potential liability grows. These are among the problems the Declaratory Judgment Act sought to alleviate. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965) ("one need not await the filing of a threatened suit by the patentee; the validity of the patent may be tested under the Declaratory Judgment Act"); *E. Edelmann & Co. v. Triple–A Specialty Co.*, 88 F.2d 852, 854 (7th Cir.), *cert. denied*, 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937) (in promulgating the Declaratory Judgment Act, Congress intended "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudica-

---

**4.** Norton asserts that its letters to 3M's customers did not cause harm to 3M. It defends its letters as merely complying with a statutory requirement that it protect its right to damages under the Process Patent Amendments Act of 1988, by giving notice of claims of infringement. *See* 35 U.S.C. § 287(b)(5). This is a frivolous and absurd assertion. The requirement of the

statute for notice expressly requires "information sufficient to persuade a reasonable person that it is likely that a product was made by a [patented] process." *Id.* Norton's letters contained no such "information" so there can be no responsible basis for claiming that Norton was merely complying with a statutory requirement rather than threatening 3M's customers.

tion without waiting until his adversary should see fit to begin suit"). It surely would serve a "useful purpose" for 3M and Norton to have a court decide whether use of the iron-based process infringes a patent claiming an aluminum-based process. Moreover, resolution of that question will "afford relief from the uncertainty, insecurity, and controversy" which the conflict between the parties has engendered. Failure to do so may cause significant harm to 3M. Therefore, it was error for the court to have failed to consider whether Norton's actions are causing 3M harm.

Norton's argument that 3M's harm is related only to the issue whether there is an actual controversy under the declaratory judgment statute, and not to the issue whether the district court properly exercised its discretion, is without merit. An evaluation of the harm is necessary to determine whether the rendering of a declaratory judgment will serve a useful purpose in settling the legal relations between Norton and 3M.

In dismissing 3M's action, the district court, while recognizing the limitations of the PTO proceeding, relied heavily on the existence of the pending interference:

> Whoever the Patent Office finds was the first to invent the seeded-gel process, that decision will leave unanswered the *scope* of the process patent, particularly whether it includes the use of both iron and aluminum as seed materials ..., an important issue before the Court in the declaratory judgment action. That issue is also before the Patent Office in the form of competing applications from Norton and 3M for product patents.

Slip op. at 12–13 (emphasis in original). The court stated that the pending interference proceeding "may" have the effect of resolving the infringement controversy, and that it is "possible" that the interference might render the infringement determination moot. Slip op. at 16–17.

An interference proceeding is principally declared to permit a determination of priority, to decide who among multiple patent applicants (or an applicant and a patentee) was the first to invent claimed subject matter. Issues of patentability can be considered, but infringement will not be. *See* 35 U.S.C. § 135 (1988) (the PTO "shall determine questions of priority of the inventions and may determine questions of patentability").

The pending interference proceeding in this case will initially determine whether Norton is entitled to retain the claims of the '364 patent, but it will not determine whether those claims cover 3M's iron-based seeded gel process. It will not, therefore, decide the infringement issue that underlies 3M's complaint. 3M is currently threatened in its business, and the Declaratory Judgment Act gives it certain means for resolving its uncertainties. For the court to fail to hear 3M's case and forego the opportunity to resolve a matter well within its capability pursuant to the role entrusted to it by the Declaratory Judgment Act is an abuse of discretion.

It is true that, if the interference results in an award of priority to 3M, the infringement action in the present suit will be moot. However, the mere chance of the action becoming moot is not reason enough to dismiss this suit. 3M's asserted declaration, in response to Norton's threats, that its "iron-based seeded gel process for making abrasive grain does not infringe the ... '364 patent" may continue unanswered through the appeal of the interference decision, possibly deferring resolution of the infringement question until well after termination of the interference.

Additionally, a district court can ultimately review the interference decision *de novo* and further delay final decision in the matter. *See* 35 U.S.C. § 146 (1988). 3M is entitled by the Declaratory Judgment Act to have a decision on the infringement question and not to have to wait until the interference is finally resolved.

We therefore hold that it was an abuse of discretion to have dismissed a declaratory judgment action for non-infringement based on a pending interference proceeding, when the interference cannot decide (or is not likely to moot) the infringement issues raised and when the declaratory

judgment plaintiff will likely suffer significant ongoing harm during any delay.

There may well be situations in which a court should decline to exercise its discretion to assume jurisdiction under the Declaratory Judgment Act when a PTO interference is underway. We do not attempt to anticipate or prejudge such situations not now before us. However, in this case, 3M should have had its rights and obligations determined in a court, as it requested, based on the rights provided to it by the Declaratory Judgment Act. We appreciate that declining to exercise jurisdiction would leave a complicated matter initially in the hands of the expert agency charged with determining whether the '364 patent was properly awarded to the first inventor. *See* 35 U.S.C. § 102(g). However, under the circumstances we have here, this benefit is subordinate to the rights provided to 3M under the Declaratory Judgment Act.

Norton cites the Seventh Circuit's decision in *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 206 USPQ 772 (7th Cir.1980), as support for its position. In that case International Harvester sought a declaration that it was not infringing Deere's patent. The court held that the declaratory judgment action should be dismissed because a pending litigation concerning the patent's validity could possibly moot the declaratory judgment issue. *International Harvester* is distinguishable from the present case on several grounds. First, the court in *International Harvester* found that the declaratory judgment action did not involve an actual case or controversy. Here, the district court expressly reserved that issue in light of its disposition of this case. Second, the court in *International Harvester* found that:

Deere [the patentee] never contacted any of IH's customers or dealers with respect to the CX–41 [the allegedly infringing device] and IH does not contend its ability to sell the CX–41 has been adversely affected by any actions of Deere.

*Id.* at 1211, 206 USPQ at 775. Moreover, International Harvester had never offered for sale any "CX–41" devices, nor had it begun any "significant efforts directed at manufacturing and marketing." *Id.* at 1216, 206 USPQ at 780. In contrast, in this case, 3M has been making significant use of its process, and Norton has threatened 3M's customers with suits for patent infringement. To allow these harms to go unremedied would undermine the intended purpose of the Declaratory Judgment Act. The district court also relied on two other district court decisions to support its judgment. However, we do not find these cases to be persuasive. We also repeat that the nature of this case, involving issues of patent law and practice, impels us to develop our own law on this issue.

■ Norton has noted that it is 3M that provoked the interference, thereby delaying resolution of the issue of infringement. We find that fact to be irrelevant to 3M's right to seek declaratory relief on the question of infringement. Seeking an interference is the means by which a party obtains a determination of priority of invention and grant of his own patent when he is aware of an already-issued patent to another. That action does not conflict with asking for a determination on the question of infringement of a granted patent.

Since the decision of the Minnesota district court, Norton has filed an infringement action in Massachusetts, implying in effect that what it argued earlier in Minnesota was premature is now timely.[5] Norton points out that there is no inconsistency in its positions before the two courts. We make no comment concerning the Massachusetts action, which is not before us, and we are not premising our decision in any way on the fact that Norton has taken action in Massachusetts. We decide here only that, based on the facts before the Minnesota district court and the competing policy considerations before it, the decision of the district court was an abuse of discretion. The mere possibility of mootness

---

**5.** At the hearing, we granted 3M's motion to take judicial notice of Norton's infringement suit filed in Massachusetts.

presented by the interference, in the face of aggressive charges of infringement and possibly accruing damages, is an insufficient reason to decline declaratory judgment jurisdiction.

## CONCLUSION

Since the district court abused its discretion in dismissing 3M's declaratory judgment action by failing to properly consider the harm a delay in adjudication would inflict on 3M, and in deciding that the pending interference proceeding made it unwise to exercise jurisdiction, we reverse the judgment and remand for further proceedings relating to the declaratory judgment action.

## COSTS

Costs to 3M.

REVERSED AND REMANDED.