# United States Court of Appeals
# for the Federal Circuit

---

**COMMUNICATIONS TEST DESIGN, INC.,**
*Plaintiff-Appellant*

**v.**

**CONTEC, LLC,**
*Defendant-Appellee*

---

2019-1672

---

Appeal from the United States District Court for the Eastern District of Pennsylvania in No. 2:18-cv-04077-GJP, Judge Gerald J. Pappert.

---

Decided: March 13, 2020

---

RICHARD WILLIAM MILLER, Ballard Spahr LLP, Atlanta, GA, argued for plaintiff-appellant. Also represented by DENNIS ALAN WHITE, JR.; LYNN E. RZONCA, Philadelphia, PA.

COBY SCOTT NIXON, Taylor English Duma LLP, Atlanta, GA, argued for defendant-appellee. Also represented by KELLY MULLALLY, SETH KINCAID TRIMBLE.

---

Before O'MALLEY, MAYER, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Communications Test Design, Inc. ("CTDI") filed suit in the United States District Court for the Eastern District of Pennsylvania, seeking declaratory judgment that its test systems do not infringe two of Contec, LLC's patents ("the Pennsylvania action"). Six days later, Contec sued CTDI for patent infringement in the United States District Court for the Northern District of New York ("the New York action"). Contec moved to dismiss the Pennsylvania action, arguing that CTDI's anticipatory filing was made in bad faith during active licensing discussions. The district court granted the motion, exercising its discretion to decline jurisdiction over CTDI's declaratory judgment action. *Commc'ns Test Design, Inc. v. Contec LLC*, 367 F. Supp. 3d 350, 360 (E.D. Pa. 2019). In doing so, the court found that equitable considerations warranted departure from the first-to-file rule. CTDI appeals the district court's dismissal of the Pennsylvania action. Because we conclude that the district court did not abuse the broad discretion accorded to it—both under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and pursuant to the first-to-file rule—we affirm.

## I. BACKGROUND

### A. The Parties

CTDI is an engineering, repair, and logistics company with its principal place of business in West Chester, Pennsylvania. *Commc'ns Test Design*, 367 F.3d at 353. Since 2007, CTDI has developed, manufactured, and been using its "Gen3" and "Gen5" test systems within the United States for testing set-top boxes and multimedia devices. *Id.* These test systems, which form the basis of Contec's infringement claims, were designed and developed at CTDI's West Chester facility. Although based in Pennsylvania,

CTDI has over ninety facilities worldwide, including one in Glenville, New York.

Contec "provides repair, test and reverse logistics for electronics hardware used in a broad range of markets." *Id.* Contec is the owner by assignment of the two patents at issue in this case: (1) U.S. Patent No. 8,209,732 for an "Arrangement and Method for Managing Testing and Repair of Set-Top Boxes;" and (2) U.S. Patent No. 8,689,071 for a "Multimedia Device Test System." *Id.* The systems described in the asserted patents were designed and developed at Contec's corporate headquarters in Schenectady, New York. *Id.* Three of the six inventors of the asserted patents reside in New York, while another left Contec in 2014 and works in CTDI's Glenville, New York facility. *Id.* at 359, 360 n.3.

## B. Pre-Suit Communications

In September 2017, Contec sent a letter to CTDI to determine whether CTDI's test systems infringed any claims of the asserted patents. Over the course of the following year, the parties exchanged numerous emails and letters. In June 2018, counsel for both parties met in person, and CTDI disclosed certain information about its test systems pursuant to a confidentiality agreement.

In September 2018, Contec's counsel sent a letter to CTDI stating that "the parties' extrajudicial process for obtaining information about CTDI's systems, without the full discovery obligations that would be imposed during litigation, has proved unsatisfactory." *Id.* at 353. Counsel explained that Contec had a good faith basis to believe that CTDI infringes at least one claim of the asserted patents. The letter asked CTDI to indicate, by September 19, 2018, whether it was willing to "discuss potential terms for a patent license agreement." *Id.* at 353–54. Contec warned that, if it did not receive such confirmation, it would sue for patent infringement. *Id.* at 354. Contec attached to its letter a draft of its proposed complaint. *Id.*

On September 19—Contec's stated deadline—Jerry Parsons, CTDI's Chairman and chief executive officer (CEO), spoke on the phone with Hari Pillai, Contec's CEO, about a possible license for Contec's patents. During that conversation, Pillai proposed initial terms, and the executives agreed to talk again on September 24, when Parsons would make a counterproposal. *Id*. After their discussion, Pillai emailed Parsons, confirming the follow-up call and indicating that he looked forward to the counterproposal. *Id*.

Later that same day, CTDI's counsel sent an email to Contec's counsel, confirming that "CTDI will consider potential terms as requested in your most recent letter." *Id*. Counsel reiterated that, "[d]espite our firm position on non-infringement and without admission, in an attempt to avoid an impasse, we remain willing to consider reasonable licensing terms and so, we encourage a continued conversation between the executives." *Id*.

On September 21—two days after accepting Contec's request to discuss licensing terms—CTDI filed a declaratory judgment action in Pennsylvania. *Id*. Later that afternoon, Parsons sent an email to Pillai, confirming that CTDI would put a licensing proposal together and accepting Pillai's suggested time for their follow-up call on September 24. *Id*. Parsons made no mention of the fact that CTDI had filed its declaratory judgment complaint.

On September 24—the day the CEOs were scheduled to talk—CTDI's counsel emailed Contec's counsel a copy of the declaratory judgment complaint. Counsel stated that official service would be held for a period of time to allow further discussion between the executives.[1]

---

[1]    CTDI ultimately served its declaratory judgment complaint on October 15, 2018.

On September 27, 2018, Contec filed its complaint for patent infringement in the Northern District of New York. That case remains pending.

## C.  Procedural History

As noted, CTDI filed the Pennsylvania action on September 21, 2018.  On November 13, 2018, Contec moved to dismiss, or in the alternative, transfer or stay, CTDI's complaint.  Contec argued that CTDI filed the Pennsylvania action "in bad faith during active licensing discussions, only after inducing Contec to refrain from filing its own complaint against CTDI in a different forum."  Def.'s Mot. to Dismiss, *Commc'ns Test Design, Inc. v. Contec, LLC*, No. 2:18cv4077 (E.D. Pa. Nov. 13, 2018), ECF No. 5.  Contec asked the court to decline to exercise jurisdiction over the declaratory judgment action and dismiss the complaint in favor of the New York action.

On February 15, 2019, the district court granted Contec's motion and dismissed CTDI's complaint.  At the outset, the court noted that "[n]either party disputes that an actual controversy exists here."  *Commc'ns Test Design,* 367 F. Supp. 3d at 355.  Both the Pennsylvania and New York actions involve the same parties, the same patents, the same allegedly infringing products, and the same issue: whether CTDI's test systems infringe Contec's patents.  The court recognized that, between CTDI's first-filed declaratory judgment action and Contec's subsequently filed patent infringement action, CTDI's first-filed action is preferred "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."  *Id.* at 356 (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

Relying on the timing and content of the parties' communications, the district court found that "CTDI filed suit in anticipation of Contec's impending infringement suit."

*Id.* at 357. Although CTDI promised Contec "a desire for a non-judicial resolution and continued negotiations," it sued Contec two days later, thereby "beat[ing] Contec to the courthouse." *Id.* The court found that, although CTDI "had every right, in its business and legal judgment, to break off negotiations and resort to litigation," it was not permitted to "string Contec along just long enough to get the judicial drop and file this lawsuit in its own backyard." *Id.* at 358. The court noted that CTDI's communications before and after its filing reveal its "nefarious motive," and ultimately determined that "CTDI's conduct was inconsistent with the policy of promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources." *Id.* at 357, 358.

Recognizing that the anticipatory nature of CTDI's suit is "merely one factor in the analysis" under the first-to-file rule, the district court explained that "[i]nterference with ongoing negotiations constitutes another 'sound reason that would make it unjust' to exercise jurisdiction over the declaratory judgment action." *Id.* at 358 (citation omitted). The court also considered the convenience of the parties and availability of witnesses and determined that, "on balance the Northern District of New York is a more convenient forum to resolve the dispute between the parties." *Id.* at 359. Given these considerations, the district court dismissed the Pennsylvania action in favor of Contec's later-filed infringement action.[2]

---

2    After the district court dismissed the Pennsylvania action, the district court in the Northern District of New York issued a decision denying CTDI's motion to dismiss that action. *Contec, LLC v. Commc'ns Test Design, Inc.*, No. 18-cv-1172, 2019 WL 4736455, at *3 (N.D.N.Y. Sept. 27, 2019). The New York district court explained that it deferred to the Eastern District of Pennsylvania's determination under the first-to-file rule, and noted that, "were it

CTDI appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

On appeal, CTDI argues that the district court abused its discretion when it dismissed CTDI's first-filed complaint seeking declaratory judgment of non-infringement in favor of Contec's later-filed patent infringement action. According to CTDI, the Pennsylvania action was "entitled to precedence" over the New York action because there was no "sound reason" to depart from the first-to-file rule and because the "center of gravity" of the alleged infringing activity is in Pennsylvania.  Appellant Br. 12–13.  CTDI asks this court to find an abuse of discretion, reverse the district court's dismissal, and remand for further proceedings on the merits of the declaratory judgment action.  In the alternative, CTDI submits that we should remand for an evidentiary hearing so that the district court can make factual findings regarding CTDI's alleged motive.  We address each issue in turn.

A.  The District Court Did Not Abuse Its Discretion.

The Declaratory Judgment Act provides, in relevant part, that: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

---

up to this Court to determine the appropriate forum, it would have come to the same conclusion." *Id.* at \*3–4.  In doing so, the New York district court remarked that it was "unable to see how an email from CTDI's CEO suggesting that a proposal was on the way—and which was written the *same day* that CTDI filed the Pennsylvania Action—could be anything other than a delay tactic to ensure the Pennsylvania Action was filed first." *Id.* at \*4.

sought." 28 U.S.C. § 2201(a). Given the statute's use of the word "may," the Supreme Court has said that a district court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. The use of that discretion is not plenary, however, and "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *see also Genentech*, 998 F.2d at 937 ("When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory action is not subject to dismissal."). We review a district court decision declining jurisdiction over a declaratory judgment for an abuse of discretion.[3] *Wilton,* 515 U.S. at 289–90.

As long as the district court "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *EMC*, 89 F.3d at 813–14. We have stated that "the purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). We have also stated that the "question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote

---

[3]    The Declaratory Judgment Act is not an independent basis for jurisdiction. *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

national uniformity in patent practice." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). Because it is an issue that falls within our exclusive subject matter jurisdiction, "we do not defer to the procedural rules of other circuits." *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995).

The district court dismissed CTDI's declaratory judgment action so that Contec's patent infringement action— filed six days later—could proceed in New York. In these circumstances, where the issue is whether a suit for declaration of patent rights should yield to a later-filed infringement suit, the trial court's discretion is guided by the first-to-file rule, "whereby the forum of the first-filed case is favored." *Genentech*, 998 F.2d at 937. "The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (citing *Genentech*, 998 F.2d at 937– 38). The filing date of an action derives from the filing of the complaint. *Id.* (citing Fed. R. Civ. P. 3). Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a later-filed duplicative action. *Id.*

The general rule is that the first-filed action is preferred, even if it is declaratory, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Serco*, 51 F.3d at 1039. "[T]rial courts have discretion to make exceptions to this general rule in the interest of justice or expediency," and we have recognized that such "exceptions are not rare." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (citing *Genentech*, 998 F.2d at 937). For example, a district court may consider "a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis." *Id.* (citing *Genentech*,

998 F.2d at 938). "Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.* at 904–05.

When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a "double dose" of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952) (noting that, in questions of priority between similar proceedings, "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts"). Although district courts can, in the exercise of that discretion, dispense with the first-to-file rule, there must "be sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938. With this framework in mind, we turn to the district court's analysis.

Here, the district court carefully considered the record of the parties' dispute, up to and including the competing filings, and concluded that several factors warranted departure from the first-to-file rule. Specifically, the court found that: (1) CTDI filed its declaratory judgment complaint in anticipation of Contec's patent infringement complaint; (2) CTDI's suit interfered with ongoing negotiations between the parties and did not serve the objectives of the Declaratory Judgment Act; and (3) on balance, the Northern District of New York is a more convenient forum. As explained below, we find no abuse of discretion in the district court's analysis.

At the outset, the record is clear that CTDI's filing was anticipatory. It is undisputed that, after the parties' extrajudicial discussions proved unsatisfactory to Contec, Contec sent CTDI a draft complaint and told CTDI that it

would file suit if CTDI did not confirm by September 18, 2018, that it was willing to discuss the terms of a potential license. *Commc'ns Test Design*, 367 F. Supp. 3d at 357. When that deadline arrived, CTDI indicated to Contec—on the phone and by letter—that it was willing to engage in licensing discussions. But two days later, CTDI filed its declaratory judgment action in Pennsylvania. Given these facts, the district court concluded that "CTDI filed suit in anticipation of Contec's impending infringement suit." *Id.*

On appeal, CTDI does not take issue with the district court's characterization of the Pennsylvania action as anticipatory.[4] Instead, it focuses on the district court's statement that CTDI's "communications, both immediately before and after CTDI's filing, . . . reveal its 'nefarious motive' to anticipate Contec's impending suit and interfere with negotiations that Contec reasonably believed CTDI was conducting in good faith." *Commc'ns Test Design*, 367 F. Supp. 3d at 357 (quoting *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1286 (Fed. Cir. 2007)). CTDI claims that the district court's dismissal was "largely if not entirely based" on its "nefarious motive"

---

[4]    Although CTDI attempts to challenge the district court's characterization of its complaint as anticipatory for the first time in its reply brief, counsel for CTDI conceded at oral argument that it failed to raise this argument in the opening brief. Oral Arg. at 7:07–18, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1672.mp3. It is well established that an issue not raised by an appellant in its opening brief is waived. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990); *see also Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1563 (Fed. Cir. 1996) ("A reply brief, which should 'reply to the brief of the appellee,' *see* Fed. R. App. P. 28(c), is not the appropriate place to raise, for the first time, an issue for appellate review.").

determination, and that such a determination "was an abuse of discretion." Appellant Br. 18. We disagree.

Although the court remarked that CTDI's pre-suit communications revealed a "nefarious motive" to anticipate and interfere with negotiations, its decision to dismiss was not, as CTDI suggests, based "largely if not entirely" on that statement. Instead, the court analyzed the parties' pre-filing actions and communications and found that CTDI filed suit in anticipation of Contec's impending infringement suit. *Commc'ns Test Design*, 367 F. Supp. 3d at 357. The court explained that, "[a]rmed with the knowledge that Contec intended to sue if the parties did not enter into a patent license, CTDI continued the pretense of good faith negotiations." *Id.* When Contec's stated deadline arrived, CTDI reassured Contec that it was willing to discuss non-judicial resolution and that litigation might be avoidable. Indeed, CTDI expressly agreed to have further licensing discussions the following week, thereby ensuring that Contec would refrain from filing its complaint. At the same time, however, CTDI was preparing its declaratory judgment complaint.

CTDI argues that, as of September 19, 2018, it was apparent to Parsons "that a licensing agreement would probably not be reached between Contec and CTDI." Appellant Br. 19. As the district court found, however, Parsons' apparent belief was never communicated to Contec. *Commc'ns Test Design*, 367 F. Supp. 3d at 358. In other words, even if Parsons believed non-judicial resolution was unlikely, the undisputed, objective evidence showed that CTDI continued to engage in and encourage negotiations. The district court found that "CTDI had every right, in its business and legal judgment, to break off negotiations and resort to litigation." *Id.* But CTDI did not have the right to "string Contec along just long enough to get the judicial drop and file this lawsuit in its own backyard." *Id.*

On this record, regardless of CTDI's motive or intent, its pre-suit communications and conduct support the district court's conclusion that the declaratory judgment action was filed in anticipation of Contec's infringement suit. As such, we find no abuse of discretion in the district court's characterization of CTDI's complaint as anticipatory.

Recognizing that the anticipatory nature of CTDI's declaratory action was "merely one factor in the analysis," the district court also found that CTDI's "[i]nterference with ongoing negotiations" provided "another 'sound reason that would make it unjust' to exercise jurisdiction over the declaratory judgment action." *Commc'ns Test Design*, 367 F. Supp. 3d at 358 (quoting *Genentech*, 998 F.2d at 938). As we held in *EMC*, district courts "may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action." *EMC*, 89 F.3d at 814. We reasoned that, when there are ongoing negotiations, a district court may find that "the need for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial resolution of the dispute." *Id.*

In *EMC*, for example, the accused infringer filed a declaratory judgment action while it was in active negotiations with the patentee, and told the patentee that its filing was "merely a defensive step" and that it wanted to continue discussions between the parties. *Id.* at 815. On appeal, we affirmed the district court's finding that the declaratory judgment complaint was "a tactical measure filed in order to improve [the accused infringer's] posture in the ongoing negotiations—not a purpose that the Declaratory Judgment Act was designed to serve." *Id.*

Here, CTDI argues that it filed the Pennsylvania action, not as a "tactical measure" to improve its "bargaining position," but rather "to obtain a resolution that nearly a year of discussions had failed to achieve." Appellant Br. 23. It submits that, "unlike EMC's complaint, CTDI's

complaint was filed for a purpose that the Declaratory Judgment Act was designed to serve—to provide CTDI with relief from uncertainty and delay regarding its legal rights." *Id.* at 24.

As the district court explained, the undisputed evidence demonstrates that license negotiations were ongoing when CTDI filed suit. Given these facts, the district court found that "CTDI took advantage of the fact that Contec deferred filing its complaint based on Contec's reasonable belief that licensing discussions were taking place in earnest, with the obvious hope that litigation would not be necessary." *Commc'ns Test Design*, 367 F. Supp. 3d at 359. The court concluded that CTDI's conduct was "inconsistent with the policy promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources." *Id.* at 358. The district court was within its discretion in reaching this conclusion.[5]

Finally, CTDI argues that the district court erred in finding that, "on balance the Northern District of New York is a more convenient forum to resolve the dispute between the parties." Appellant Br. 27 (quoting *Commc'ns Test Design*, 367 F. Supp. 3d at 359). On this point, the district court considered that CTDI is headquartered in West Chester, Pennsylvania, and that many of the witnesses with testimony relevant to the accused test systems are located in West Chester. *Commc'ns Test Design*, 367 F. Supp. 3d at 359. But the district court also considered that CTDI has over ninety facilities worldwide, including in Glenville,

---

[5]    Although CTDI argues that the district court erred in focusing on the parties' dealings after September 12, 2018, and not on their communications over the course of the prior year, the record is clear that the parties did not begin to discuss a potential license until September 19, 2018.

New York, where the accused test systems have been used. *Id.*

As to Contec, the district court considered that: (1) its corporate headquarters are in New York; (2) it has no witnesses, physical facilities or place of business in Pennsylvania; (3) Contec's employee files for its current and former employees, its email server and its record databases are maintained in its New York facility; (4) three of the six inventors of the patents at issue are current residents of New York; and (5) five of the inventors, "who would serve as key witnesses," are beyond the subpoena power of the district court. *Id.* On balance, the court found that these factors favored Contec's later-filed New York action. *Id.* at 359–60.

On appeal, CTDI does not take issue with the district court's fact findings relevant to the convenience factors. Oral Arg. at 10:05–31 ("We don't dispute the findings, Your Honor, but [we] do dispute the conclusion that they demonstrate that the Northern District of New York is in fact a more convenient forum overall."). Instead, it argues that, on balance, the "center of gravity" of the alleged infringing activity is in the Eastern District of Pennsylvania. Appellant Br. 28. We find no error in the district court's balancing of the convenience factors, which is committed to the court's sound discretion. These factors, coupled with the district court's findings that CTDI's complaint interfered with ongoing negotiations and was filed in anticipation of Contec's infringement suit, support the district court's decision to depart from the first-to-file rule and dismiss CTDI's complaint.

## B. Remand Is Not Necessary.

Although CTDI maintains that this court should reverse the district court's dismissal and remand for further proceedings on the merits of the declaratory judgment action, it asks, in the alternative, that we remand for an evidentiary hearing because "the district court made factual

16          COMMUNICATIONS TEST DESIGN v. CONTEC, LLC

findings regarding CTDI's 'motive' necessary to its decision." Appellant Br. 34.

The procedure employed by the district court to make jurisdictional determinations is a "procedural question not unique to patent law," and thus is governed by the law of the regional circuit—here, the Third Circuit. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1310 (Fed. Cir. 2016). We review the district court's choice of procedure for an abuse of discretion. *See Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3d Cir. 1972). For the reasons explained below, we find no such abuse of discretion. Accordingly, remand is not warranted.

First, in support of its procedural objection, CTDI argues that Contec's motion to dismiss was "akin to a factual attack on subject matter jurisdiction" and relies on procedures district courts employ when reviewing factual challenges to subject matter jurisdiction in the Rule 12(b)(1) context. Appellant Br. 35. But as CTDI concedes, "whether the district court had subject matter jurisdiction was not at issue." *Id.* at 34. Importantly, Contec's motion to dismiss was not a Rule 12(b)(1) motion, and did not challenge the district court's subject matter jurisdiction. Instead, Contec moved to dismiss CTDI's complaint pursuant to the district court's discretion under the Declaratory Judgment Act, which does not implicate the court's subject matter jurisdiction. *See Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) (explaining that the Declaratory Judgment Act ("DJA") "does not confer jurisdiction, and therefore also does not afford the opportunity to decline it. The DJA gives district courts the discretion to decline to exercise the conferred remedial power, but in no way modifies the district court's jurisdiction, which must properly exist independent of the DJA." (internal citation omitted)). Given this posture, the procedures CTDI attempts to invoke—which provide for a hearing if there is a dispute of material fact relevant to a jurisdictional issue—are inapplicable. CTDI cites no

authority requiring a district court to hold an evidentiary hearing when deciding whether it should, in its discretion, exercise jurisdiction over a declaratory judgment action.

Second, it is well-established that a "court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'" *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (quoting *Tanzymore*, 457 F.2d at 1323–24). "A key consideration in determining whether a hearing is required is whether either party requested one." *Id.* Here, the parties had ample opportunity to be heard through declarations and briefs. Neither party requested oral argument or an evidentiary hearing. As such, the district court did not err in dismissing CTDI's complaint without a hearing.

Finally, where there are no material facts in dispute, a hearing is not required. *See McCann*, 458 F.3d at 290. According to CTDI, in finding that it acted with a "nefarious motive," the district court made certain factual and credibility determinations that should have only been made after a hearing. Appellant Br. 34. But the district court's statement that CTDI acted with a "nefarious motive" was not necessary to its decision. The district court found that CTDI's filing was anticipatory, disruptive to ongoing negotiations, and inconsistent with the purpose of the Declaratory Judgment Act. The objective evidence in the record supports these findings. As such, remand for a hearing is not warranted.

## III. Conclusion

We have considered CTDI's remaining arguments and find them unpersuasive. Because the district court acted within its discretion in declining to exercise jurisdiction over CTDI's declaratory judgment action, we affirm the district court's dismissal.

## **AFFIRMED**